USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 3|2|06

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------x

FREDDIE H. COOK, SYLVESTER L.    :
FLEMING, JR. and TIMOTHY J. GANDY,   :
on behalf of themselves and all other similarly  :
situated persons,       :

            Plaintiffs,   :

      -against-   :

UBS FINANCIAL SERVICES, INC.,   :

           Defendant.   :

------------------------------------------------------------x

05 Civ. 8842 (SHS)

OPINION & ORDER

SIDNEY H. STEIN, U.S. District Judge.

     Defendant UBS Financial Services, Inc. ("UBSFS") has moved for an order
transferring this action to the United States District Court for the District of Maryland
pursuant to 28 U.S.C. § 1404(a) and 28 U.S.C. § 1406(a). After reviewing the
submissions of the parties and hearing oral argument, the Court finds that because venue
does not lie in the Southern District of New York for plaintiffs' Title VII claim, that
claim should be transferred to the District of Maryland pursuant to 28 U.S.C. § 1406(a);
because the District of Maryland is clearly a more appropriate forum for the resolution of
this dispute than is the Southern District of New York, plaintiffs' remaining claim should
be transferred to the District of Maryland as well, but pursuant to 28 U.S.C. § 1404(a),
not section 1406(a). Cf. Baron Philippe de Rothschild, S.A. v. Paramount Distillers, Inc.,
923 F. Supp. 433, 437-38 (S.D.N.Y. 1996).

1

## A. Background

Plaintiffs Freddie H. Cook, Sylvester L. Fleming, Jr. and Timothy J. Gandy are former employees of UBSFS who are African-American. They bring this action on their own behalf and on behalf of all other persons similarly situated and assert claims based on race discrimination in violation of (1) Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq., as amended by the Civil Rights Act of 1991, and (2) the Civil Rights Act of 1866, 42 U.S.C. § 1981.

Fleming and Cook are residents of Maryland. (Compl. ¶¶ 6-7). Most of their allegations of racial discrimination concern their former employment in the Largo, Maryland office of UBSFS. (See id. ¶¶ 37-48). The complaint alleges that Fleming and Cook were lured into taking positions at the Largo office, which was staffed almost entirely with African-Americans, on the promise that "the Largo branch office would provide a significant opportunity for business growth and that UBSFS was committed to the success of the Largo branch office." (Id. ¶¶ 37, 44). Yet, according to the complaint, UBSFS "failed to support, fund and operate the Largo branch in a manner comparable to UBSFS's other predominantly Caucasian branch offices." (Id. ¶ 39). Specifically, the complaint alleges that the Largo office was referred to derisively as a "diversity" office; was not given an adequate marketing budget; did not have the proper number of client service associates or employees with the appropriate regulatory licenses; and had a sales manager with no sales experience and an operations manager with no previous experience as an operations manager. (Id. ¶¶ 40, 45). Fleming and Cook also assert that

2

they were discriminated against while employed at UBSFS's office in Washington, D.C. (Id. ¶¶ 49-50).

The complaint's assertions concerning the third named plaintiff, Timothy J. Gandy, all involve alleged discrimination at various UBSFS offices in California, where Gandy resides. (Id. ¶¶ 8, 51-63). None of the named plaintiffs was ever employed by UBSFS in New York, where the company's headquarters are located. (See id. ¶¶ 9, 37-63). Nor did any of the allegedly unlawful actions concerning any of the named plaintiffs occur in New York. (See Compl. ¶¶ 37-63).

Plaintiffs, however, present a declaration from Major Khan, a former employee at UBSFS who worked in the company's Weehawken office, stating that branch office policy decisions "had to be approved by senior management in the New York Headquarters Office before being disseminated to the field" and that the "final decisions" in regard to hiring personnel to staff a new office "were made in either New York or Weehawken." (See Decl. of Major Khan dated Jan. 23, 2006 ("Khan Decl.") ¶¶ 10, 12). Khan also asserts that "[m]ost [of UBSFS's] personnel records are maintained in the Weehawken office," and speculates that "[p]ersonnel records for Plaintiffs Freddie Cook and Sylvester Fleming would be kept in New York or in Weehawken." (Id. ¶ 19).

However, the only evidence or allegations before the Court pertaining specifically to the named plaintiffs shows that neither plaintiffs' direct supervisors, nor those to whom these supervisors reported, were located in New York and that plaintiffs' personnel records also are not located in New York. Coe M. Magruder, who oversaw UBSFS's Largo office and who became Fleming's and Cook's direct supervisor when

they were transferred to the Washington, D.C. office, was located in Washington, D.C. throughout Fleming's and Cook's employment. (See Decl. of Coe M. Magruder dated Dec. 30, 2005 ("Magruder Decl.") ¶¶ 1-3, 6, 10). Magruder attests that "[n]one of the managers to whom I have reported while employed at UBSFS have been located in New York"; the final decision to open the branch office in Largo was subject to the approval of supervisors in Washington, D.C. and Weehawken; and, to his knowledge, "none of the decisions relating to the employment of Mr. Fleming or Mr. Cook [in the Largo office] required the approval of any manager located in New York" and "[n]one of the decisions made by me or my management team relating to the employment of Mr. Fleming or Mr. Cook [in the D.C. office] required the approval of any manager located in New York." (Id. ¶¶ 3, 5, 8, 10). Magruder also states that "I am aware of no employment records relating to Mr. Fleming or Mr. Cook that are or were maintained or administered in New York." (Id. ¶ 11).

As for Gandy, defendant presents the declaration of a UBSFS human resources manager who reviewed Gandy's personnel records and found that during his employment with UBSFS, in which Gandy "worked in branch offices located solely in California," he "reported to a branch manager, who in turn reported to a Regional Director, who, in turn, reported to a Division Manager" – and that "[n]one of these managers was located in New York." (Decl. of Jennifer Nies dated Dec. 30, 2005 ¶ 2). The declaration also states that "[n]one of the employment records relating to Mr. Gandy are or were maintained or administered in New York." (Id. ¶ 4).

4

Fleming is currently the only named plaintiff to have received a "right to sue" letter from the Equal Employment Opportunity Commission; as a result, only Fleming has met the prerequisites to filing suit pursuant to Title VII. Plaintiffs assert that since the complaint was filed, Cook received his right to sue letter and thus "it is anticipated that Plaintiffs will seek to amend the Complaint to assert a Title VII claim on behalf of Mr. Cook." (Pls.' Mem. of Law in Opp. to Defs.' Motion to Transfer at 2 n.2).

## B. Venue Does Not Lie in this District for Plaintiffs' Title VII Claim

There is no dispute that venue is proper in the Southern District of New York for plaintiffs' section 1981 claim because venue over this claim is governed by the general venue statute, 28 U.S.C. § 1391, which provides that venue is proper in any judicial district in which a defendant resides. See 28 U.S.C. § 1391(b). The existence of UBSFS's corporate headquarters in New York thus confers venue over plaintiffs' section 1981 claim.

Venue over the Title VII claim, on the other hand, is not determined by the general venue statute, but rather is "strictly governed" by 42 U.S.C. § 2000e-5(f)(3). Templeton v. Veterans Admin., 540 F. Supp. 695, 696 (S.D.N.Y. 1982); see also Bolar v. Frank, 938 F.2d 377, 378-79 (2d Cir. 1991). Section 2000e-5(f)(3) provides that a Title VII action

> may be brought in any judicial district in the State in which the unlawful
> employment practice is alleged to have been committed, in the judicial
> district in which the employment records relevant to such practice are
> maintained and administered, or in the judicial district in which the
> aggrieved person would have worked but for the alleged unlawful
> employment practice, but if the respondent is not found within any such
> district, such an action may be brought within the judicial district in which

5

the respondent has his principal office.

42 U.S.C. § 2000e-5(f)(3).

In analyzing these potential bases for venue, the Court looks only at those allegations that concern discrimination against Fleming, as he is the only named plaintiff asserting a Title VII claim. See Quarles v. General Inv. & Dev. Co., 260 F. Supp. 2d 1, 13 (D.D.C. 2003) (Title VII does not permit "a class representative to bring suit in a jurisdiction where he cannot personally satisfy the venue requirements of the statute."); 7A Wright, Miller & Kane, Fed. Prac. & Proc. Civ.3d § 1757 ("The general rule [for class actions] is that only the residence of the named parties is relevant for determining whether venue is proper."); Hsin Ten Enterprise USA, Inc. v. Clark Enterprises, 138 F. Supp. 2d 449, 462 (S.D.N.Y. 2000) ("Generally, venue must be established for each separate claim in a complaint."). None of the allegations concerning Fleming meets the criteria for any of the four bases of venue provided for in section 2000e-5(f)(3).

First, all of the unlawful employment practices alleged in the complaint involving Fleming occurred in Maryland and Washington, D.C., not New York. (See Compl. ¶¶ 37-50). Plaintiffs attempt to get around this fact through the Khan declaration, which, as noted above, asserts that UBSFS develops its policies and procedures for its branch offices "either in the New York Headquarters Office or the Weehawken office or jointly by personnel working in those two offices" and that "[n]o matter where the policy was developed, it had to be approved by senior management in the New York Headquarters Office before being disseminated to the field." (Khan Decl. ¶ 10). Khan also asserts that

the "final decisions" in regard to hiring personnel to staff a new office "were made in either New York or Weehawken." (Id. ¶ 12).

Khan's statements, however, are wholly untethered to the allegations in the complaint. At most they establish that broad-based personnel policies had to be approved by UBSFS's Manhattan headquarters. It does not necessarily follow, however, that any of the specific personnel decisions affecting Fleming or the Largo office were made in New York. Therefore, neither the complaint nor the facts asserted in the Khan declaration are sufficient to establish that the unlawful employment practices complained of were committed in New York. See Robinson v. Potter, No. Civ. A 04-0890, 2005 WL 1151429, *4 (D.D.C. May 16, 2005) ("Mere speculation of principal office involvement does not counter the fact that in the plaintiff's complaint, the acts committed occurred [in a different district]").

Moreover, Khan's generalized assertions are specifically contradicted by the Magruder declaration, which, as described above, states that none of the decisions relating to the employment of Fleming or Cook required the approval of any managers in New York. (See Magruder Decl. ¶¶ 5-10). Magruder's declaration is carefully worded – he does not state explicitly that no decisions with regard to Fleming or the Largo office were ever made in New York, attesting only that no such decisions were *required* to be made in New York – but that does not alter the fact that plaintiffs do not make any specific allegation that any of the employment practices complained of resulted from decisions made in New York. Such an omission distinguishes this case from Hoffman v. United Telecommunications, Inc., 575 F. Supp. 1463, 1484 (D. Kan. 1983), in which a

district court found Title VII venue based on the location of the parent company's headquarters. In that case, plaintiffs had submitted substantial evidence that the policies complained of were directly "established and implemented" by the parent company. Hoffman, 575 F. Supp. at 1484. The district judge ruled that venue was proper because the parent company exercised such "control" over the "development and enforcement of its personnel policies and practices" that "the alleged unlawful employment practice" could be considered to have taken place in the parent company's district. Id. Here, on the other hand, plaintiffs have presented no such evidence of control or decisionmaking by UBSFS's New York headquarters. Accordingly, plaintiffs do not satisfy the first basis for venue pursuant to 42 U.S.C. § 2000e-5(f)(3).

Nor do plaintiffs satisfy any of the other three bases for Title VII venue. With regard to the second basis, the complaint does not allege that employment records relevant to Fleming are maintained or administered in New York. (See Compl. ¶¶ 37-50). Moreover, Khan's declaration only speculates that based on his familiarity with "UBSFS's practices regard[ing] record storage ... [p]ersonnel records for Plaintiffs Freddie Cook and Sylvester Fleming would be kept in New York or Weehawken." (Khan Decl. ¶ 19) (emphasis added). The conditional nature of this assertion is insufficient on its own to establish venue, see Hsin Ten Enterprise USA, Inc., 138 F. Supp. 2d at 457 ("plaintiff bears the burden of proving that venue is proper"), and is contradicted by Magruder's statement that he is unaware of any employment records relating to Fleming or Cook that are maintained or administered in New York (see Magruder Decl. ¶¶ 11). The third basis for Title VII venue is inapplicable because Fleming never applied to work

in New York. And the final basis – venue based on location of principal office – applies only when none of the other three bases is satisfied by any other district. See Minnette v. Time Warner, 997 F.2d 1023, 1026 (2d Cir. 1993) ("the judicial district where the employer's principal office is located is a proper place for venue only if venue cannot be laid in one of the other three possible districts specified by the statute"); Arrocha v. Panama Canal Comm'n, 609 F. Supp. 231, 234 (E.D.N.Y. 1985) (the principal office provision of Title VII "was enacted to cover the 'rare case' when the employer could not be found in one of the other three districts."). Here, venue would properly lie in the District of Maryland pursuant to the first statutory basis for venue because, as described above, "the unlawful employment practice is alleged to have been committed" in Maryland. Cf. 42 U.S.C. § 2000e-5(f)(3). Thus, the "principal office" provision of the Title VII venue statute does not assist plaintiffs.

Because plaintiffs are unable to satisfy any of the bases for venue pursuant to 42 U.S.C. § 2000e-5(f)(3),[1] the Court can only hear plaintiffs' Title VII claim if it exercises its discretion to find pendent venue over that claim. Courts have generally used two approaches in determining whether to recognize pendent venue, one in which the more "specific" venue provision controls, and the other in which the venue provision applicable to the "primary" claim asserted controls. See Garrel v. NYLCare Health Plans, Inc., No. 98 Civ. 9077, 1999 WL 459925, *5 (S.D.N.Y. Jun. 29, 1999). Under either approach, however, pendent venue over plaintiffs' Title VII claim would not apply

---

[1] The Court notes that even if plaintiffs amend their complaint so that Cook, in addition to Fleming, asserts a Title VII claim, venue still would not lie in this district for this claim because neither the complaint, nor the Khan declaration, alleges that Cook was situated any differently than Fleming in terms of the location of the alleged unlawful employment practices or the location of the relevant employment records. See Compl. ¶¶ 37-50; Khan Decl. ¶ 10.

9

because Title VII has the "more specific" venue provision than does section 1981, see James v. Booz-Allen & Hamilton, Inc., 227 F. Supp. 2d 16, 21 (D.D.C. 2002), and Title VII is considered to be the "primary" claim when joined with a section 1981 claim, see Bragg v. Hoffman Homes, Inc., No. 04-CV-4984, 2005 WL 272966, *2 (E.D. Pa. Feb. 3, 2005). See McNeill v. James, No. Civ. CCB-04-1807, 2004 WL 2538400, *2 (D. Md. Nov. 9, 2004) (declining to find pendent venue over a Title VII claim pursuant to either the "specific provision" approach or the "primary claim" approach). Accordingly, the Court declines to exercise its discretion to recognize pendent venue over the Title VII claim.

Rather, the Court will transfer this claim to the District of Maryland pursuant to 28 U.S.C. § 1406(a) because the interests of justice are furthered by transferring the claim as opposed to dismissing it – as the claim may prove to be meritorious and defendant does not oppose transfer – and the claim could have been brought originally in the District of Maryland because, as noted above, most of the alleged unlawful employment practices concerning Fleming occurred in Maryland, satisfying the first basis of Title VII's venue requirement. See 42 U.S.C. § 2000e-5(f)(3); 28 U.S.C. § 1406(a). This is true for Cook's allegations as well, assuming he amends the complaint to assert a Title VII claim on his own behalf, as his attorney has represented he will.

## C. Plaintiffs' Section 1981 Claim Should Be Transferred Pursuant to 28 U.S.C. § 1404(a)

As explained above, venue in this district is proper for plaintiffs' section 1981 claim based on the location of UBSFS's corporate headquarters in New York. However, the Court finds that, pursuant to 28 U.S.C. § 1404(a), the interests of justice and the

10

convenience of the parties and witnesses would be far better served by also transferring the section 1981 claim to the District of Maryland.

"The determination whether to grant a change of venue requires a balancing of conveniences, which is left to the sound discretion of the district court." Filmline (Cross-Country) Productions, Inc. v. United Artists Corp., 865 F.2d 513, 520 (2d Cir. 1989); see also Anadigics, Inc. v. Raytheon Co., 903 F. Supp. 615, 617 (S.D.N.Y. 1995). The moving party bears the burden of establishing that (1) the case could have been brought in the alternate forum; and (2) the convenience of parties and witnesses and the interest of justice will be better served by transfer to another forum. See United States v. Nature's Farm Products, Inc., No. 00 Civ. 6593, 2004 WL 1077968, *3 (S.D.N.Y. May 13, 2004). "That burden is heavy: unless the balance is strongly in favor of the defendant, the plaintiff's choice of forum should rarely be disturbed." Id. (internal citations and quotation marks omitted).

Plaintiffs' section 1981 claim could have been brought in the District of Maryland because defendant has multiple offices there (see Magruder Decl. ¶¶ 9) and because "a substantial part of the events or omissions giving rise to the claim occurred" there. See 28 U.S.C. § 1391(b)(1) and (2).

In evaluating the appropriateness of transfer, courts are to consider the following factors: plaintiffs' choice of forum; location of the operative facts; convenience of the parties and witnesses; location of documents and ease of access to sources of proof; the forum's familiarity with the governing law; the availability of process to compel the attendance of unwilling witnesses; the relative means of the parties; and trial efficiency.

See Anadigics, 903 F. Supp. at 617; Bristol-Myers Squibb Co. v. Andrx Pharmaceuticals, LLC, No. 03 Civ. 2503, 2003 WL 22888804, *2 (S.D.N.Y. Dec. 5, 2003); Pilates, Inc. v. Pilates Inst., Inc., 891 F. Supp. 175, 183 (S.D.N.Y. 1995). Applied here, the Court finds that these factors weigh heavily in favor of transferring the case to the District of Maryland.

To begin with, Maryland has a much more substantial connection to the dispute than does New York because most of the events at issue occurred there. Even if the Court considers the allegations pertaining to the putative class as a whole, as opposed to only the named plaintiffs,[2] the alleged discriminatory actions at issue occurred in Maryland, Washington, D.C. and California. The only connection to the Southern District of New York is that UBSFS's corporate headquarters is located here and that, according to Khan, some of the decisions relating to personnel and the operation of branch offices were made either here or in Weehawken, New Jersey. (See Khan Decl. ¶ 10-13). By comparison, plaintiffs reference Largo, Maryland 27 times in their complaint and Largo, by any fair reading of the allegations, constitutes the locus of the allegedly unlawful actions undertaken by defendant.

Trial efficiency and the convenience of the parties and witnesses also weigh heavily in favor of transfer. Because this Court is transferring plaintiffs' Title VII claim

---

[2] The law is clear that in determining whether venue for a putative class action is proper, courts are to look only at the allegations pertaining to the named representatives. See 7A Wright, Miller & Kane, Fed. Prac. & Proc. Civ.3d § 1757; United States ex rel. Sero v. Preiser, 506 F.2d 1115, 1129 (2d Cir. 1974) (venue pursuant to 28 U.S.C. § 1391 "may be satisfied if only the named parties to a class action meet its requirements"). Once the propriety of venue has been established, however, some courts have considered allegations pertaining to the class as a whole in determining whether to transfer venue pursuant to 28 U.S.C. § 1404(a). See Ellis v. Costco Wholesale Corp., 372 F. Supp. 2d 530, 539, 543 (N.D. Cal. 2005); Berenson v. Nat'l Fin. Servs., LLC, 319 F. Supp. 2d 1 (D.D.C. 2004).

12

to the District of Maryland pursuant to 28 U.S.C. § 1406(a), retaining venue over the section 1981 claim would require the parties to prosecute two actions simultaneously in two different districts and would require witnesses to appear in both locations. This would be a substantial waste of both judicial and litigant resources. Transferring the section 1981 claim to Maryland would allow the entire case to proceed in a single district. See Vinson v. Seven Seventeen HB Philadelphia Corp., No. Civ. A. 00-6334, 2001 WL 1774073, *30 (E.D. Pa. Oct. 31, 2001) ("in cases involving claims under Title VII and another claim governed by the general venue statute of § 1391, courts have consistently transferred the entire action to the district where venue is proper for both claims"); McNeill, 2004 WL 2538400, at *2 ("Generally, in cases involving Title VII and ADEA claims where venue is proper for one claim, but not the other, courts have transferred both claims to the district where venue is proper for both.").

The only significant factor weighing against transfer is plaintiff's choice of forum. But while this factor is normally entitled to considerable deference, see Seagoing Uniform Corp. v. Texaco, Inc., 705 F. Supp. 918, 936 (S.D.N.Y. 1989), this presumption does not apply where there is "little material connection" between the chosen forum and the facts or issues of the case. Bordiga v. Directors Guild of America, 159 F.R.D. 457, 462 (S.D.N.Y. 1995); see also Anadigics, Inc., 903 F. Supp. at 617; Tomchuck v. Union Trust Co., 875 F.Supp. 242, 245 (S.D.N.Y. 1995); De Jesus v. National R.R. Passenger Corp., 725 F. Supp. 207, 208 (S.D.N.Y. 1989).

The remaining factors are not dispositive. In regard to the location of documents, Khan's declaration states that while some personnel records were maintained in New

13

York, "[m]ost personnel records are maintained in the Weehawken office, including contracts, job postings, yearly reviews, licenses and certifications." (Khan Decl. ¶ 19.) The ability to compel testimony cuts both ways because the Court presumes that the parties will seek to call witnesses from both New York and Maryland. Familiarity with the governing law is not a factor because the complaint asserts only federal claims. (See Compl. ¶¶ 64-70). Finally, the relative means of the parties is inconsequential in regard to venue because two of the three defendants reside in Maryland and the third, who resides in California, would experience no additional economic hardship if the case were resolved in Maryland as opposed to New York.

Balancing all of the material circumstances of this case in light of the factors set forth above, the Court finds that for the convenience of parties and witnesses, in the interest of justice, plaintiffs' section 1981 claim should be transferred to the District of Maryland.

Accordingly, UBSFS's motion pursuant to 28 U.S.C. § 1404(a) and 28 U.S.C. § 1406(a) to transfer this action to the United States District Court for the District of Maryland is granted.

Dated: New York, New York
March 21, 2006

SO ORDERED:

Sidney H. Stein, U.S.D.J.

14